# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA TUGGLE, et al., | Case No. 1:19-cv-01525-NONE-SAB |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS AGAINST PLAINTIFFS LETITIA TUGGLE AND CAMERON WARE |
| v. | |
| CITY OF TULARE, et al., | |
| Defendants. | (ECF Nos. 44, 45, 48, 52, 55) |
| CITY OF TULARE, et al., | |
| Counter Claimants | |
| v. | |
| LETICIA TUGGLE, et al., | |
| Counter Defendants. | |

## I.

## INTRODUCTION

Currently before the Court is Defendants' motion to compel discovery and for the sanctions of dismissal and monetary costs against Plaintiffs Letitia Tuggle, individually and as representative of the estate of Quinntin Castro ("Tuggle"), and Cameron Ware ("Ware").

For the reasons discussed herein, the Court shall grant in part and deny in part the motion

to compel and for sanctions. The motion shall be denied to the extent it seeks terminating sanctions and granted to the extent it seeks monetary sanctions. Further, pursuant to the matters discussed at the July 28, 2021 hearing and the Court's request for a proposed order outlining appropriate evidentiary sanctions and a response by Plaintiffs Ware and Tuggle to such, the Court shall impose evidentiary sanctions against Plaintiffs Tuggle and Ware for the repeated failure to comply with the discovery rules and discovery orders from the Court. Given the evidentiary sanctions preclude Ware and Tuggle from providing additional responses or introducing evidence not produced and verified prior to July 14, 2021, no additional order compelling further responses is necessary.[1]

## II.

## PROCEDURAL HISTORY

On October 27, 2019, Letitia Tuggle, individually and as representative of the estate of Quinntin Castro, Rosa Cuevas ("Cuevas"), and Cameron Ware ("Ware") (collectively "Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. ¶ 1983 against the City of Tulare and Police Chief Matt Machado. (ECF No. 1.) On December 3, 2019, Defendant City of Tulare ("Tulare") filed an answer. (ECF No. 4.) Along with the answer, Tulare, with Ryan Garcia joining ("Counter-Claimants"), filed a counterclaim against Tuggle, as representative of the estate of Quintinn Castro, Cuevas, and Ware ("Counter-Defendants"). (ECF No. 4.) Counter-Defendants filed a motion to dismiss the counterclaim on December 24, 2019, and Counter-Claimants filed a first amended counterclaim on January 13, 2020. (ECF Nos. 6, 8.) Counter-Defendants filed a second motion to dismiss on February 3, 2020, which was granted on July 14, 2020. (ECF No. 11, 16.) On this same date, a second amended counterclaim was filed and Counter-Defendants filed an answer on August 4, 2020. (ECF Nos. 17, 18.)

A scheduling conference was held on September 8, 2020, and the scheduling order in this matter issued. (ECF Nos. 20, 21.) On November 3, 2020, Plaintiffs filed a first amended

---

[1] As ordered below, such evidentiary sanctions do not absolve Plaintiffs from their duty to supplement incomplete or incorrect disclosures, or to supplement with changed information, however, any supplementation will remain as subject to the evidentiary sanctions and exclusions specified herein, as far as their ability to utilize such evidence in advancing the specified claims, or offering documents produced after July 14, 2021.

2

1  complaint adding Sergeant Andy Garcia, K9 Officer Garcia[2], and Police Officers Puente and
2  Bradley as defendants in this action.  (ECF No. 22.)  A stipulation for leave to file a first
3  amended complaint was filed on November 6, 2020.  (ECF No. 23.)  On November 6, 2020, an
4  order was filed granting the stipulation to file the amended complaint nunc pro tunc.  (ECF No.
5  24.)  On November 11, 2020, Defendants filed an answer to the first amended complaint.  (ECF
6  No. 25.)

7         On February 17, 2021, a motion for discovery sanctions was filed by Defendants.  (ECF
8  No. 21.)  On February 26, 2021, an order issued granting Defendants' motion to compel and
9  request for sanctions.  (ECF No. 28.)  The order provided that within twenty days of February
10  26, 2021, Plaintiffs Tuggle and Ware were to serve responses to the interrogatories; Plaintiff
11  Cuevas was to supplement her response to Interrogatories No. 2, 5, 8, and 9; Plaintiffs Cuevas
12  and Ware were to serve responses to the request for production of documents; Plaintiff Tuggle
13  was to supplement her response to the request for production of documents; and within thirty
14  days, Plaintiffs were to pay costs of $1,645.00 to the attorneys for Defendants.  (Id. at 11-12.)[3]

15         On April 12, 2021, Defendants filed a motion to compel and for sanctions as to Plaintiffs
16  Tuggle and Ware.  (ECF No. 33.)  On May 19, 2021, the Court granted in part and denied
17  Defendant's motion.  (ECF No. 42.)  Specifically, the Court ordered that: (1) within five days of
18  entry, the parties were to meet and confer regarding Plaintiff Tuggle and Ware's responses to
19  interrogatories and Tuggle's response to the request for production of documents; (2) within ten
20  days of entry, Tuggle and Ware were required to serve a verification for all discovery responses
21  served on Defendants to date, to the extent they had not already done so; (3) within twenty (20)
22  of entry of the order, Tuggle and Ware were required to serve verified amended responses to the
23  interrogatories and Tuggle was required to serve a verified amended response to the request for
24  production of documents; (4) and within thirty (30) days of entry, Plaintiffs Tuggle and ware
25  were required to pay $2,467.50 in costs to the attorneys for Defendants.  (ECF No. 42 at 22-23.)

26  ---
     [2]  The filing does not contain the name "Ryan," though this Garcia refers to Defendant and Counter-Claimant Ryan
27  Garcia.

28  [3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
     CM/ECF electronic court docketing system.

1   Plaintiffs Tuggle and Ware were specifically advised that the failure to comply with the order

2   would result in the issuance of further sanctions, up to and including dismissal of their action.

3   (Id. at 23.)

4          On June 25, 2021, Defendants filed a motion to compel Plaintiffs Tuggle and Ware to

5   comply with the Court's previous discovery orders, and a motion seeking terminating sanctions

6   for the failure to comply with such previous orders.  (ECF No. 44.)  On July 14, 2021, Tuggle

7   and Ware filed an opposition to Defendants' motion.  (ECF No. 45.)  On July 16, 2021,

8   Defendants filed a reply to Tuggle and Ware's opposition.  (ECF No. 48.)

9          On July 20, 2021, pursuant to the stipulation of the parties, a second amended complaint

10  was filed only on behalf of Plaintiff Cuevas.  (ECF Nos. 50, 51.)  On July 27, 2021, Defendants

11  filed an answer to Plaintiff Cueva's second amended complaint.  (ECF No. 53.)

12         On July 23, 2021, counsel for Plaintiffs Tuggle and Ware filed a supplemental

13  declaration in opposition to the motion for sanctions.  (ECF No. 52.)  On July 28, 2021, the

14  Court held a hearing on Defendants' motion to compel discovery and for sanctions.  (ECF No.

15  54.)  Bruce Praet ("Praet" or "Defense Counsel") appeared on behalf of Defendants via video.

16  (Id.)  Stanley Goff ("Goff" or "Counsel Goff") and Fulvio Cajina ("Cajina" or "Counsel

17  "Cajina") (collectively ("Plaintiffs' Counsel")[4], appeared on behalf of Plaintiffs Tuggle and

18  Ware via video.  (Id.)  Given the matters discussed at the July 28, 2021 hearing, the Court

19  ordered that Defendants file a proposed order specifying proper evidentiary sanctions on or

20  before July 30, 2021, and that Plaintiffs could file a response or objections to the proposed

21  evidentiary sanctions by August 4, 2021.  (ECF No. 54.)  On July 30, 2021, Defendants filed a

22  proposed order outlining proposed evidentiary sanctions, along with supplemental briefing

23  regarding such proposed sanctions.  (ECF No. 55.)  On August 4, 2021, Plaintiffs filed a

24  response to the proposed order and briefing.  (ECF No. 56.)

25  / / /

26  / / /

27  _____

    [4]  Herein, the Court may refer to the Plaintiffs Ware and Tuggle simply as "Plaintiffs," or Tuggle and Ware's
28  counsel as "Plaintiffs' Counsel," despite the fact that Plaintiff Cuevas is represented by different counsel, is not a
    subject of this motion, the current discovery dispute, or any forthcoming sanctions.

### III.

### LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

'The discovery process in theory should be cooperative and largely unsupervised by the district court. But when required disclosures aren't made or cooperation breaks down, Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures or discovery." Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1219 (9th Cir. 2018). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" where "(i) a deponent fails to answer a question asked under Rule 30 or 31; (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4); (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). The party opposing the discovery bears the burden of resisting disclosure. Bryant v. Armstrong, 285 F.R.D. 596, 600 (S.D. Cal. 2012).

If the motion is granted or the disclosure or requested discovery is provided after the filing of the motion, the court must order the offending party "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court

1  action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified;

2  or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

3        Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party fails to obey

4  an order to provide or permit discovery, the court may issue further just orders, which may

5  include: "(i) directing that the matters embraced in the order or other designated facts be taken as

6  established for purposes of the action, as the prevailing party claims; (ii) prohibiting the

7  disobedient party from supporting or opposing designated claims or defenses, or from

8  introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv)

9  staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in

10 whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating

11 as contempt of court the failure to obey any order except an order to submit to a physical or

12 mental examination." Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to the [other

13 sanctions outlined in the Rule,] the court must order the disobedient party, the attorney advising

14 that party, or both to pay the reasonable expenses, including attorney's fees, caused by the

15 failure, unless the failure was substantially justified or other circumstances make an award of

16 expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

17      A party "who has responded to an interrogatory, request for production, or request for

18 admission—must supplement or correct its disclosure or response: . . . as ordered by the court."

19 Fed. R. Civ. P. 26(e)(1)(B). If a party fails to do so, "the party is not allowed to use that

20 information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

21 failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or

22 instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A)

23 may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

24 (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions,

25 including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(A)-(C).

26 / / /

27 / / /

28 / / /

# IV.

## DISCUSSION

Defendants move for an order dismissing Plaintiffs Tuggle and Ware's claims with prejudice and for monetary sanctions for the failure to comply with their discovery obligations and the Court's orders dated February 26, 2021, and May 19, 2021.  (Defs.' Mot. Compel Discovery & Sanctions ("Mot"), ECF No. 44.)  While Defendants initially sought compulsion of further responses, as acknowledged in the reply, "[w]hile Plaintiffs seem to have finally provided responses to written discovery served sixteen (16) months ago, it is inexcusable that it took not one, not two, but three motions to compel to gain compliance."  (Defs.' Reply Pls.' Opp'n ("Reply") 2, ECF No. 48 (emphasis in original).)  As such, the Court need not specifically compel the Plaintiffs Tuggle and Ware to provide further responses at this time.  Instead, evidentiary sanctions will be imposed, including but not limited to excluding Plaintiffs Ware and Tuggle from introducing any testimony or evidence not served and verified by July 14, 2021, that could have been.  As acknowledged by Plaintiffs' Counsel and discussed herein, Ware did not provide verifications with the responses served on July 14, 2021, and the Court rejects the excuses provided for the failure to do so.  The Court will not grant any additional time for counsel to obtain verifications anything unverified before such July 14, 2021, and Plaintiffs Tuggle and Ware will be excluded from presenting any unverified responses or documents not served by such date.[5]

As obvious from the filings related to this motion, including Plaintiffs' opposition and supplemental declaration, and considering the course of events surrounding the previous motions to compel, Defendants were indeed required to file the third motion to compel in order to obtain compliance with the discovery obligations and the orders of the Court.  Accordingly, in addition to evidentiary sanctions, Defendants shall be awarded the costs incurred in bringing the motion.

---

[5]  At the hearing, the Court rejected the excuses proffered for the inability to obtain Ware's verifications.  Although not explicitly stated at the hearing, the Court would have perhaps entertained a sincere effort to comply and obtain verifications by the end of the week following the hearing, if counsel were inclined to counter the tentative ruling that no unverified responses received before July 14, 2021 would be allowed and put forth such an effort at the same time as providing the requested objections to the Defendants' proposed order on evidentiary sanctions.  Plaintiffs made no such effort, and indeed concede Ware should largely be subject to sanctions for the failure to provide verified responses.

**A.**     **Events Since the Order on the Previous Motion to Compel was Issued**

On May 20, 2021, in line with the requirements of the Court's May 19, 2021 order, Defendants sent a letter seeking to meet and confer with Plaintiffs Ware and Tuggle, and providing a detailed outline of the outstanding deficiencies with their discovery responses. (Mot. 7; Decl. Bruce D. Praet ("Praet Decl.") ¶ 2, ECF No. 44, Ex. 12, ECF No. 44-1.) With the coordinated efforts of new counsel for Plaintiff Cuevas, a meet and confer call was conducted on June 3, 2021, to discuss all outstanding discovery issues. (Mot. 7; Praet Decl. ¶ 3.) Counsel for Plaintiffs Tuggle and Ware failed to participate in this meeting. (Id.) Other than emails concerning deposition dates, Defendants received no other communication from counsel for Ware and Tuggle regarding the ongoing discovery issues. (Id.)

On June 11, 2021, Defense Counsel received a check for payment of monetary sanctions, erroneously issued to "Bruce Parat [sic]" despite the Court's Order designating the law firm as the payee, and despite Praet's return email to Goff confirming payee information. (Mot. 7; Praet Decl. ¶ 4.) By June 24, 2021, the day before the instant motion to compel was filed, Defendants had not received the verifications the Court ordered to be served by May 31, 2021, nor amended responses the Court ordered served by June 9, 2021. (Mot. 7; Praet Decl. ¶ 5.) Neither did Defendants receive any communication from Plaintiffs' Tuggle and Ware's counsel seeking additional time nor offering any explanation for the noncompliance. (Praet Decl. ¶ 5.)

In the opposition filed on July 14, 2021, Plaintiffs Tuggle and Ware vaguely contend that they provided "several rounds of amended responses to defendants' discovery requests, including some that are been [sic] served in connection herewith." (Pls.' Opp'n Mot. Compel ("Opp'n") 2, ECF No. 45.) Plaintiffs argue that it would improper to grant terminating sanctions where discovery is still "wide open, Plaintiffs have amended their responses and provided code-complaint answers, and no trial date has been set." (Opp'n 3.)

A primary argument as to the failure to comply with the Court's May 19, 2021 order requiring further meet and confer and further discovery responses was provided in a late-filed declaration submitted by counsel Goff on July 23, 2021. (Suppl. Decl. Stanley Goff Opp'n Defs. Mot. Compel ("Goff Suppl. Decl."), ECF No. 52.) Specifically, Goff sets forth the following

1  timeline of events: on April 2, 2021, Ware and Tuggle submitted amended discovery responses;

2  on April 5, 2021, Defense Counsel emailed Goff stating the discovery responses were inadequate

3  and demanded supplemental responses within 48 hours; on or around April 10, 2021, Plaintiffs

4  submitted supplemental responses by regular postal mail; thereafter, Defendants filed the second

5  motion to compel on April 12, 2021; based on Defendants' reply brief filed May 3, 2021,

6  Defense Counsel did not receive the latest amended responses until after the April 12, 2021

7  motion was filed; the Court requested supplemental briefing regarding such responses on May

8  11, 2021 (ECF No. 38); the Court further requested clarification from Defendants on May 13,

9  2021 (ECF Nos. 40, 41); and on May 19, 2021, Ware and Tuggle were ordered by the Court to

10  produce amended discovery responses (ECF No. 42.)  (Goff Suppl. Decl. ¶¶ 3-13.)  Based on

11  these events, Counsel Goff then declares that:

> I inadvertently believed that the amended responses that were last
> submitted to Defendants on or around April 10, 2021 and received
> by Defendants well after they filed their April 12, 2021, motion to
> compel, satisfied the Court's May 19, 2021, order, which I
> honestly believed was based on the April 12th motion to compel
> and therefore, mistakenly believed that no additional amendments
> to the Plaintiff's discovery responses had to be made unless further
> instructed to do so.

17  (Goff Suppl. Decl. ¶ 14.)  For various reasons explained throughout this order, even if Goff may

18  have made an honest mistake, this timeline of events does not excuse the failure to comply with

19  the Court's May 19, 2021 order, which clearly stated the Court's understanding of the fact that

20  there were additional responses provided following the initial filing of the second motion to

21  compel, as shown by the Court's requests for supplemental briefing and clarification from

22  Defendants, and then clearly ordered the parties to meet and confer and provide further

23  responses.  (See ECF No. 42 at 3, 18, 22-23.)  In fact, in the order, the Court stated the following

24  regarding these events:

> Second, the Court finds it concerning that Plaintiffs Tuggle and
> Ware assert that supplemental responses were served at roughly
> the same time as the motion to compel was filed.  (Decl. of Stanley
> Goff, ¶ 11, ECF No. 34-1.)  The responses were not served until
> seven days after the filing of the motion to compel. (ECF No. 37-
> 1.)  The attempt to downplay Plaintiffs Tuggle and Ware's
> noncompliance and mislead the Court as to the timing of the

1  amended response supports a finding of bad faith.

2  (ECF No. 42 at 18.)

3      The rest of Plaintiffs' arguments made in opposition appear to accuse Defendants of

4  miscasting the state of affairs regarding the instant discovery dispute or purposely withholding

5  certain facts from the Court, in addition to providing excuses for Plaintiffs' failures to provide

6  discovery, such as the fact that Ware does not have access to a computer, or asserted vision

7  problems when dealing with the stress of losing of her son on the part of Tuggle that cause

8  difficulties when working through the discovery or locating documents.

9      Plaintiffs seem to aver to the Court that Defendants "purposely withhold" the fact that

10  Plaintiffs Tuggle and Ware are set to be deposed on August 9, 2021.  (Opp'n 2.)  However, in the

11  moving papers filed on June 25, 2021, Defendants specifically proffer that "while the discovery

12  cut-off is still over four months away, the parties are now setting depositions for August.

13  Defendants have now spent well over a year seeking comprehensive responses to written

14  discovery in an effort to properly prepare for the depositions of Plaintiffs.  Yet, with depositions

15  now just a month away, Defendants remain without critical foundation information upon which

16  to depose Plaintiffs Tuggle and Ware."  (Mot. 17.)  The Court finds Plaintiffs' attempt to frame

17  the Defendants as deliberately withholding this fact disingenuous at worst, and careless at best.

18      Plaintiffs argue that at these upcoming depositions, Defendants will be able to ask the

19  Plaintiffs for additional information that may not be contained in the responses, in addition to

20  having "ample time to continue conducting discovery in this case," given discovery does not

21  close until November 1, 2021.  (Opp'n 2.)  The Court rejects the argument that amounts to:

22  insufficient discovery responses are sufficient or slighting orders of the Court is permissible if

23  depositions are scheduled.  Defendants are entitled to conduct discovery sufficient to allow them

24  to fully prepare for depositions.  Written discovery is utilized to prepare and fully develop all

25  relevant facts at the deposition, so as to obviate the need for further written production and

26  multiple depositions of the same witness.  Further, as counsel *should* be aware, the undersigned

27  sets discovery deadlines with the requirement that motions to compel be heard and time for

28  responses ordered to be completed by the end of the discovery deadline.  (See ECF No. 21 at 3

1  ("In other words, discovery requests and deposition notices must be served sufficiently in advance

2  of the discovery deadlines to permit time for a response, time to meet and confer, time to prepare, file

3  and hear a motion to compel and time to obtain relief on a motion to compel.").)

4         The Court will accept Plaintiffs' proffer that it was not a purposeful violation of the

5  Court's order when Plaintiffs issued a sanctions check made out to Defense Counsel rather than

6  counsel's firm.  However, the Court again rejects Plaintiffs' contention that Defense Counsel is

7  "purposefully withhold[ing]" information (Opp'n 2), by Defense Counsel not specifically stating

8  in moving papers that the check is a cashier's check that has not been returned, or given the fact

9  it could be endorsed over to the law firm.

10        Plaintiffs argue that Counsel Goff's failure to participate in a meet and confer call on

11  June 3, 2021, is inaccurately portrayed, as in fact, Goff made repeated attempts to log on to the

12  call but was unable to enter the conference call.  (Opp'n 2-3.)  Counsel Goff submits in the late

13  filed declaration that it was an honest mistake, and emphasized the same at the hearing.  At the

14  hearing, Goff claims he told counsel for Plaintiff Cuevas, who is not subject to the instant motion

15  and discovery dispute, that Goff was unable to connect and that he asked Cuevas' counsel to

16  convey such fact to Defense Counsel.  At the hearing, Goff again tried to argue that Defendants

17  were mischaracterizing the situation; that he did not intentionally not show up to flout the

18  Court's order; and then stated he "believes" he sent an email to all parties stating he was unable

19  to connect.

20        However, the opposition and declaration do not state Goff sent any such email, and it

21  could have easily been provided to the Court.  More importantly, Goff does not proffer he made

22  any attempt to reschedule a meet and confer session that would have complied with the Court's

23  order that required the parties to meet and confer within five days of entry to discuss Tuggle and

24  Ware's responses to interrogatories and Tuggle's response to the request for production of

25  documents.  (ECF No. 42 at 22.)  It does not appear to the Court that Plaintiffs' Counsel made

26  any further attempt to meet and confer as required by the Court's May 19, 2021 order.  In fact,

27  Goff's first declaration only states that he was unable to log onto the conference call, and that

28  immediately following the call, he "spoke with co-counsel, Michael Haddad, who informed

1  [Goff] about what was discussed." (Goff Decl. ¶ 5.)  Notably, the declaration does not mention

2  Goff asking Haddad to convey the message that he was unable to connect to the call, let alone

3  proffer that Goff sent any form of follow-up email.  (Id.)

4          If Counsel Goff had in fact followed through properly after his failure to connect to and

5  attend the conference call, perhaps he would have been informed that the previous discovery

6  responses submitted on or around April 10, 2021, were not compliant with the Court's May 19,

7  2021 order and avoided the need for Defendants to file this third motion to compel.

8  Accordingly, the Court again rejects Plaintiffs' Counsel's attempt to mischaracterize Defense

9  Counsel as being less than straightforward with the Court.  The repeated attempts to do so only

10  make Plaintiffs' Counsel appear less convincing considering the totality of all the failures present

11  in this action that have occurred through the course of discovery here and the three motions to

12  compel.  If anything, as presented, Plaintiffs' Counsel appear to be mischaracterizing Defense

13  Counsel.

14          While Plaintiffs' Counsel appears to contend mistakes and other circumstances are to

15  blame for many of the failures here, 483 days have passed from the time the discovery was

16  initially served on March 18, 2020, and July 14, 2021, the date Plaintiffs' opposition was filed.

17  This does appear to demonstrate some willfulness or bad faith, while perhaps not always directly

18  on Plaintiffs' Counsel, at least on the part of the Tuggle and Ware who seem to not be

19  cooperative or forthcoming in working with counsel at the least.  Nonetheless, Plaintiffs'

20  Counsel also appear to be deficient in their responsibilities of ensuring their clients fulfill their

21  discovery obligations and comply with the orders of the Court.

22          Among the cavalcade of failures by Tuggle, Ware, and their counsel, is the remaining

23  fact that Ware has still not provided verifications to the amended responses provided

24  concurrently with the July 14, 2021 opposition.  Specifically, the filing proffers that "Ware does

25  not have access to a fax or computer . . . [and] will provide a signed verification when counsel

26  visits him for his deposition."  (Opp'n 3.)  Counsel attempted to justify the failure to obtain

27  verifications stating at the hearing that it was a "hike" to visit Plaintiff Ware in person.

28          At the hearing, when asked why responses could not have been provided closer to the

date of propounding in March of 2020, Plaintiffs' Counsel stated that Ware and Tuggle were difficult to locate.  This indicates to the Court that there is a failure to prosecute on the part of Plaintiffs.  Counsel apologized to the Court and Defendants for previous failure, proffer they have "full access' now, and highlight that responses have become increasingly more compliant.

Counsel Goff proffered that Plaintiff Tuggle takes this matter seriously given this case involves the loss of her son.  The Court is surely sympathetic to the grief of losing a loved one, however, when any plaintiff institutes serious litigation such as this, any such plaintiff is subject to the rules and obligations involved in prosecuting such action.  In turn, counsel, having experience in litigation such as this, have an obligation to the client to ensure their client is complying with the rules and obligations of the court where the action is ongoing, and to explain that while emotional, an order to provide discovery and other rules must be complied with.  Here, Plaintiffs have a right to discovery to prosecute their claims.  Conversely, Defendants have a right to discovery as it is necessary to defend themselves against the claims that Plaintiffs Tuggle and Ware have voluntarily instituted and are prosecuting.

At the hearing, Counsel Cajina proffered that Tuggle not only suffers from normal bereavement, but is also suffering from a form of temporary blindness that occurs when Tuggle attempts to go through documents and prepare responsive documents for the requests for production.  However, Plaintiffs never brought the issue of a temporary disability to the Court.  The Court does not understand why this could not be addressed earlier, or worked out through counsel, after three motions to compel, and 465 days passing between the time the discovery was initially served on March 18, 2020, and the date Defendants filed the third motion to compel on June 25, 2021.  A temporary disability may very well be a reason for an extension of time or reasonable accommodations to be made by the opposing parties, or by the Court if absolutely necessary, however, Defendants granted multiple extensions of time for compliance, this is the third motion to compel, and this now stated excuse is not sufficient to excuse Tuggle from her discovery obligations or for counsel to ensure that Tuggle was in compliance with clear orders from the Court.  When pressed with these facts, Counsel Cajina then seemed to agree the failure was not justified.

1   The Court's impression is that Plaintiffs' Counsel are not focused on this case, that the

2   responses do not appear complicated or difficult to complete in any sense that could or would

3   justify an inability to complete by the time even the first motion to compel was filed, and that

4   Plaintiffs' Counsel are wasting the Court's and Defense Counsel's time on these repeated

5   failures to provide discovery and comply with the Court's orders.  Plaintiffs' Counsel state they

6   are now totally "on board," and that there will be no issues in the future.

7   As indicated in the Reply and discussed at the hearing, Defendants do not appear to be

8   seeking further compulsion of responses beyond what has been provided as of July 14, 2021, and

9   at this point, may have to stand on what has been given, subject to the evidentiary sanctions

10  imposed herein, and as pressed on Plaintiffs Tuggle and Ware at the upcoming depositions.  The

11  motion itself as filed focused on seeking terminating sanctions, and at least by the time of the

12  filing of the supplemental responses filed concurrently with the opposition, Defendants appear to

13  only seek sanctions and do not desire nor would they be inclined to allow Plaintiffs Ware and

14  Tuggle any additional time to provide further responses.  Thus the Court need not quibble over

15  arguments regarding individual responses, for example where Plaintiffs argue that Defendants

16  are making "mountains of mole-hills," such as in regards to Ware's response that previously

17  worked at Red Carpet Carwash, but failed to provide that his position was as "car washer."

18  (Opp'n 3.)  The Court will accept that Plaintiffs' responses are substantively "complete" for

19  purposes of determining whether an order compelling further responses is necessary.

20  However, as explained throughout the order, Ware's responses provided on July 14,

21  2021, are not verified, and thus are not sufficient and the Court will afford Plaintiff Ware no

22  additional time to verify.  In the opposition, Counsel Goff declares that:

23          For the past two months, counsel has been unable to reach Plaintiff
            Cameron Ware in order to amend discovery responses.  Mr. Ware
24          is part of a vulnerable class.  For the past several weeks, Mr.
            Ware's phone number has been disconnected.  Plaintiff's counsel
25          was finally able to reach Mr. Ware last week and amend the
            discovery responses.
26

27  (Goff Decl. ¶ 6.)  It is not clear why Counsel Goff would have been trying to reach Ware to

28  provide amended discovery responses for the two months prior to the filing of the opposition on

1  July 14, 2021, if in fact Goff was also under the impression that the amended responses that were
2  submitted on or around April 10, 2021, satisfied the Court's May 19, 2021 order, which Goff
3  "honestly believed was based on the April 12th motion to compel, and therefore, mistakenly
4  believed that no additional amendments to the Plaintiff's discovery responses had to be made
5  unless further instructed to do so." (Goff Suppl. Decl. ¶ 14.) From May 19, 2021, until July 14,
6  2021, roughly equates to a two-month period, whereas the period from the time the third motion
7  to compel was filed on June 25, 2021, until July 14, 2021, is less than a one-month period.

8      Having considered the general facts and arguments of the parties' pertaining to motion to
9  compel and for sanctions, the Court now turns to further discuss the specific factors applicable to
10  Defendants' request for terminating sanctions.

11  **B.    The Court Denies Terminating Sanctions and Imposes Evidentiary and**
        **Monetary Sanctions**
12

13      Defendants seek terminating sanctions as well as monetary sanctions for the costs of
14  bringing the instant motion. Defendants argue terminating sanctions are appropriate given
15  Plaintiff Ware and Tuggle have failed to comply with the Court's orders compelling discovery.
16  Further, Defendants contend that lesser sanctions have been ineffective as the Court has twice
17  imposed monetary sanctions, and the Court specifically warned that continued non-compliance
18  would result in further sanctions, including potential dismissal of this action. (Mot. 16.)

19      1.    Factors to Consider in Determining Sanctions

20      Rule 37 provides that if a party fails to obey an order to provide discovery, "the Court
21  may issue further just orders" including "dismissing the action or proceeding in whole or in
22  part[.]" Fed. R. Civ. P. 37(b)(2)(A). In the context of Rule 37(b) sanctions, the term "order"
23  under Rule 37(a) is "read broadly." Sali, 884 F.3d 1218. "Both the advisory committee notes
24  and case law suggest that Rule 37's 'requirement for an 'order' should ... include any order
25  relating to discovery.' " Id. (citing Halaco Eng'g Co. v. Costle, 843 F.2d 376, 379 (9th Cir.
26  1988); Fed. R. Civ. P. 37(b) advisory committee's note to 1970 amendment ("The scope of Rule
27  37(b)(2) is broadened by extending it to include any order 'to provide or permit discovery'....
28  Various rules authorize orders for discovery.... Rule 37(b)(2) should provide comprehensively

for enforcement of all these orders.").

In determining whether to dismiss an action for failure to comply with a pretrial order, the Court must weigh: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotations and citations omitted); accord Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).  These factors guide a court in deciding what to do, and are not conditions that must be met in order for a court to take action.  In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d at 1226.

While the Defendants move for terminating sanctions, district courts utilize the same factors in determining whether evidentiary sanctions are appropriate, or in specifically determining that the lesser sanction of evidentiary sanctions is more properly applied rather than a terminating sanction.   See, e.g., Singh v. Bunch, No. 115CV00646DADBAM, 2018 WL 6111663, at *5 (E.D. Cal. Nov. 21, 2018); Choudhuri v. Wells Fargo Bank, N.A., No. 15-CV-03608-VC (KAW), 2017 WL 5598685, at *8 (N.D. Cal. Nov. 21, 2017); Tacori Enterprises v. Beverly Jewellery Co., 253 F.R.D. 577, 583 (C.D. Cal. 2008); Carson Cheng v. AIM Sports, Inc., No. CV103814PSGPLAX, 2011 WL 13175663, at *11 (C.D. Cal. Aug. 23, 2011).

### a.    Public's Interest in Expeditious Litigation and Court's Need to Manage Docket

Defendants submit that given that the Court previously weighed these factors in favor of dismissal (ECF No. 42 at 17), Plaintiffs' ongoing delays only increase the Court's and public's interest in favor of dismissal  (Mot. 16.)  Plaintiffs respond that the public interest would not be advanced by issuing terminating sanctions against Plaintiffs Ware and Tuggle where Plaintiff Cuevas' claim would still go forward, and the Tulare Police Department officers would still need to complete discovery and potential trial in order for a determination to be made as whether they violated Cuevas', Mr. Castro's, and Mr. Ware's civil rights on the day of the shooting.  (Opp'n 11.)  Plaintiffs also proffer that given only Ware and Cueva survived the shooting, Ware would

still be guaranteed to testify, either via deposition or at trial or both.  (Id.)  As for the Court's docket, Plaintiffs argue that terminating sanctions would not result in the Court's docket getting any lighter, that this case would still continue, and note this case hasn't been assigned to a District Judge at this time and has been set for a trial a year from now.  (Id.)  In reply, Defendants frame Plaintiffs' opposition as only superficially concluding this factor weighs against termination, and that Plaintiffs disregard the Court's previous order that this factor weighs in favor of termination (ECF No. 42 at 17).

Plaintiffs' arguments are not availing.  These two factors that the Court considers together are not dependent on the continued existence of a case if Plaintiffs are terminated, or the fact that a plaintiff such as Ware may be a witness.  The public has an interest in litigants that follow the rules of the Court, prosecute their case, participate in their obligations to complete discovery, and thus allow for the litigation to be expeditiously completed for all parties and the public.  These same considerations weigh on the Court's need to manage its docket.  While this case may remain with other parties even if these parties were to be terminated, the Court still has to ensure the parties are complying with their obligations and following the Court's rules.  As explained above, Plaintiffs Tuggle and Ware and their counsel have flouted the orders of the Court, and disrupted the management of this case and the rightful course of discovery.

The Court finds that the record supports a finding that Plaintiffs Tuggle and Ware have not fulfilled their obligations to prosecute this action and have repeatedly failed to adequately respond to Defendants' discovery requests necessitating three motions to compel.  Plaintiffs did not comply with the May 19, 2021 order, necessitating this third motion to compel, and Ware has still not provided verifications with the responses served on July 14, 2021.  Plaintiffs' failure to comply in this matter has unnecessarily required the Court to devote time and resources on this action which could have been devoted to other cases on the Court's docket.  Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002).

Given Plaintiffs' failure to obey the orders of the court and the series of noncompliant discovery responses, the Court finds that the public interest and the Court's need to manage its docket weigh in favor of dismissal of this action.

1    **b.    Risk of Prejudice to Defendants**

2    Defendants argue that although the Court previously weighed this factor against dismissal

3    in anticipation of Plaintiffs' compliance with the most recent order, such compliance has again

4    been blatantly ignored.  (Mot. 16-17.)  While nonexpert discovery expires on November 1, 2021,

5    Defendants argue that depositions are set in August of 2021, Defendants have spent well over a

6    year seeking comprehensive responses to written discovery in an effort to properly prepare for

7    such depositions, and now Defendants remain without critical foundational information upon

8    which to depose Plaintiffs Tuggle and Ware.  (Mot. 17.)  As the  depositions approach,

9    Defendants argue further prejudice by the inability to research any responses, even if now

10   provided, before the depositions.  Defendants also submit that while they have mutually arranged

11   with counsel for Plaintiff Cuevas to permit the depositions of all Defendant officers to move

12   forward in August, it would be unduly prejudicial to Defendants and unjustly rewarding to

13   Plaintiffs Tuggle and Ware to permit them to participate in the depositions of Defendants in spite

14   of their own failure to comply with their own discovery obligations and Court Orders.  (Id.)

15   Thus, Defendants argue the ineffectiveness of lesser sanctions and Plaintiffs' continuing non-

16   compliance must this shift this factor in favor of dismissal.  (Id.)

17   Plaintiffs respond that Defendants have suffered no prejudice as a result of the "alleged

18   (and disputed) behavior by Plaintiffs," as: (1) Plaintiffs have provided rule-compliant and

19   complete discovery responses as set forth above; (2) Defendants thus have a considerable

20   amount of time to review plaintiffs' discovery responses prior to their depositions; (3) discovery

21   is "still wide open"; and thus there is "no danger that defendants are being sandbagged in any

22   way."  (Opp'n 11.)  Plaintiffs further submit that Defendants, "facing no real prejudice, are

23   merely seeking that the Court award them a victory by decree," and given Plaintiffs Ware and

24   Tuggle are set to be deposed on August 9, 2021, Defendants will have the opportunity to ask

25   anything they want to Tuggle and Ware, and Ware would likely be deposed even if he were

26   terminated from the action.  (Opp'n 11-12.)

27   Defendants reply that despite 16 months of discovery and three motions to compel,

28   Plaintiffs' only argument is that there is still almost three months of time to conduct adequate

discovery.  (Reply 5.)  However, Defendants highlight that Tuggle has only just now identified various caregivers just two weeks before her scheduled deposition, thus not only failing to produce supporting treatment records, but not allowing Defendants any time to seek such records prior to her deposition.  (Id.)  Defendants believe that even if they once again agree to continue the discovery deadlines, history shows additional delays would arise, and Defendants have already spent too much time compelling discovery and have other trials being set during the remaining short period of discovery.  (Id.)

The Court again finds Plaintiffs' arguments unavailing, particularly the proffer they have provided rule-compliant and complete discovery, and that Defendants suffer "no real prejudice," considering, as examples, there are still no verifications provided by Ware with the most recent responses, and the fact that Plaintiff Tuggle has not provided any treatment records.   "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case."  Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990).  The Court rejects Plaintiffs' argument that Defendants can simply work around the inadequate discovery thus far by asking questions or utilizing certain strategies at deposition.  Through the course of Plaintiffs' failures to comply with discovery, Defendants are clearly prejudiced in their ability to thoroughly prepare for depositions as they have not had adequate written responses and documents produced with sufficient time to prepare.  Further, the Court is cognizant of the fact that the order on this motion and the resulting evidentiary sanctions will leave Defendants with somewhat limited time to clearly determine the outlying contours of what the deposition should or will entail, as subject to such forthcoming evidentiary sanctions.

The Court considers the fact that discovery deadline could be extended and has not yet been in this action, however, Defendants are correct that given the history of this action, the Court does not trust that further delays and noncompliance would not occur on Plaintiffs' behalf, and agrees that Defendants have already spent too much time and resources on what should be a simple course of exchanging discovery prior to the depositions.

Plaintiffs have provided some discovery in this action, and in response to this motion.

1   However, given the course of noncompliance, and the proximity to depositions in relation to

2   what has been provided, the absence of verifications from Ware, and other considerations as

3   discussed in this order, Defendants have clearly been prejudiced.  However, the Court finds that

4   the risk of prejudice to Defendants can be countered at this time through the imposition of

5   evidentiary sanctions, and thus this factor does not tip toward dismissal at this juncture.  As

6   explained below, the Court has only imposed the lesser sanctions of monetary sanctions thus far,

7   and finds it appropriate to impose greater sanctions than previously in the form of significant

8   evidentiary sanctions.

9           **c.     Policy Favoring Disposition on the Merits**

10          Defendants emphasize that on the previous request for terminating sanctions, the Court

11  found that this factor was a "close call", weighing only slightly against dismissal in order to give

12  Plaintiffs a final opportunity to comply (ECF No. 42 at 18).  (Mot. 17.)  Defendants argue that in

13  light of Plaintiffs' latest flagrant disregard of the Court's order, this can no longer be considered

14  a "close call," and on the contrary, Plaintiffs have now demonstrated their willingness to twice

15  disobey clear orders as they continue to fail to diligently prosecute their case.  (Id.)

16          Plaintiffs respond it is undisputed there is a strong public policy favoring disposition on

17  the merits; that Plaintiffs have provided complete and thorough discovery responses; Defendants

18  face no prejudice as a result of "even, arguably, late discovery responses" where discovery is still

19  open for months and Defendants are set to depose the Plaintiffs in weeks.   (Opp'n 12.)

20  Additionally, Plaintiffs submit that "any problems they had in amending their responses

21  stemmed from issues out of counsel's control."  (Id.)  Specifically as to Ware, that: Ware is a

22  part of a vulnerable population; Ware currently does not have a job; Ware has less than

23  consistent cell phone service and for the past several weeks[6] (up to a couple of days ago),

24  Plaintiffs' counsel had been unable to communicate with him; and that it was only recently that

25  Ware was able to talk with counsel.  (Id.)  As for Tuggle, Plaintiffs' Counsel proffer that she is

26  suffering from a serious and documented eye condition that makes it hard for her to read and

27

---

28  [6]  As noted above, in the declaration Plaintiffs' counsel states that it had been two months that he had been trying to
    contact Ware for amended responses.  (Goff Decl. ¶ 6.)

1  review documents; thus it took some time to provide counsel with all requested documents; and

2  she has provided all of the documents in her possession, custody and control, and Plaintiffs'

3  Counsel have amended their responses to reflect those documents.  (Id.)  Specifically, Plaintiffs

4  proffer that Tuggle has produced over 140 MB of documentation.

5       The Court has already addressed these proffered reasons above, and why the Court finds

6  them not convincing, and specifically, does not demonstrate that issues are beyond Plaintiffs'

7  Counsel's control.  As stated above, the Court's impression is that Plaintiffs' Counsel are not

8  focused on this case, that the responses do not appear complicated or difficult to complete in any

9  sense that could or would justify an inability to complete by the time even the first motion to

10  compel was filed, and that Plaintiffs' Counsel are wasting the Court's and Defense Counsel's

11  time on these repeated failures to provide discovery and comply with the Court's orders.  At this

12  late stage of discovery, the Court rejects the excuses regarding the failure to communicate with

13  Ware and the excuse that he does not have a computer as to why verifications were not provided

14  on July 14, 2021.  Counsel Cajina stated it was a "hike" to Tulare.  The Court believes Plaintiffs'

15  Counsel need to more actively take accountability, more actively work with their clients, and

16  more actively take time to ensure compliance, whether by taking the drive to Tulare to obtain

17  verifications, or by simply working with the client to get the client to a FedEx Staples or other

18  facility with a fax machine and a copier or similar technology.  The Court is under the

19  impression that public libraries offer computer access to people in their community.  Attorneys

20  work with clients across the country everyday – there are ways to obtain verifications other than

21  physically meeting with a client, particularly over the course of hundreds of days since discovery

22  is served.

23       In the previous order dated May 19, 2021, the Court found it concerning that Plaintiffs'

24  Counsel asserted that supplemental responses were served at roughly the same time as the

25  motion to compel was filed when the responses were not served until seven days after the filing

26  of the motion to compel, and found such attempt to downplay Plaintiffs Tuggle and Ware's

27  noncompliance and mislead the Court as to the timing of the amended response supported a

28  finding of bad faith.  (ECF No. 42 at 18.)  The Court has already rejected Plaintiffs' attempts to

1   cast Defense Counsel as mischaracterizing events and arguments, when it appears it is Plaintiffs'

2   Counsel that is doing so.

3           While it appears Tuggle has made a more sincere effort to recently to comply with the

4   discovery obligations and communicate with counsel, the course of conduct, particularly as to

5   Ware, would support a finding of willful disobedience of the Court's orders and discovery

6   obligations.  Jorgesen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003) (quoting Hyde & Drath v.

7   Baker, 24 F.3d 1162, 1167 (9th Cir. 1994)) ("Disobedient conduct not shown to be outside the

8   control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault.").

9           In this instance, although there are concerns regarding Plaintiffs Tuggle and Ware's

10  compliance with the Court's order and their discovery responses, the Court is mindful of the

11  policy favoring resolution of disputes on the merits, and that courts will impose lesser sanctions

12  and afford plaintiffs ample opportunity to correct the deficiencies in their discovery responses

13  before granting dismissal.  Payne v. Exxon Corp., 121 F.3d 503, 506 (9th Cir. 1997).  The Court

14  has already afforded ample time to correct, and some deficiencies have been corrected.  While

15  Defendants are correct the Court previously found this factor to be a close call, and it is fair for

16  Defendants to argue the tipping point has been reached, the Court finds the policy favoring

17  resolution of cases on the merits still weighs against dismissal of this action, particularly given

18  consideration of the next factor of availability of lesser sanctions and the Court's deciions to

19  impose evidentiary sanctions.  As the Ninth Circuit has reiterated: "Where a court order is

20  violated, the first two factors support sanctions and the fourth factor cuts against a default.

21  Therefore, it is the third [prejudice] and fifth [lesser sanctions] factors that are decisive."  Payne

22  v. Exxon Corp., 121 F.3d 503, 507 (9th Cir. 1997) (quoting Adriana Int'l Corp. v. Thoeren, 913

23  F.2d 1406, 1412 (9th Cir. 1990)).  Accordingly, the Court finds this factor weighs against

24  terminating sanctions and the totality of the circumstances weigh in favor of evidentiary

25  sanctions.

26          **d.      Availability of Lesser Sanctions**

27          Defendants emphasize the Court previously chose the lesser sanctions of monetary costs

28  in relation to the previous motions to compel, and while they have been paid, the sanctions have

1   not resulted in the ultimate goal of Plaintiffs meeting their discovery obligations after over a year

2   of extraordinary efforts and accommodations.  (Mot. 18.)  As for alternative sanctions such as

3   Rule 37(b)(2)(A)(ii), such as prohibiting Plaintiffs from introducing various claims or evidence,

4   Defendants contend such a sanction would still not resolve the inability of Defendants to

5   thoroughly investigate the facts underlying any remaining claims after the continuous failures to

6   comply with discovery obligations.  Further, Defendants highlight this Court, in previously

7   warning Plaintiffs, expressly stated that further noncompliance would likely shift the balance in

8   favor of a terminating sanction (ECF No. 42 at 20, n.3), and given the failure to heed the

9   warning, it is time for the Court to follow through so that the orders of the Court remain

10  effective.

11       In the reply, Defendants highlight that Plaintiffs do not even attempt to argue this factor

12  in their opposition, likely because the Court has previously imposed monetary sanctions twice in

13  this action.  (Reply 5.)  It is true that Plaintiffs do not separately address this factor in a specific

14  fashion, and the Court considers the arguments made generally throughout the opposition as

15  expressed throughout this order.  In the Reply, Defendants argue that while termination is a

16  drastic sanction, it is equally unconscionable that Ware and Tuggle have blatantly and willfully

17  ignored their discovery obligations in spite of sixteen (16) months of extraordinary

18  accommodations by Defendants; have twice disobeyed court orders; and would not have

19  undertaken the last efforts but for Defendants having been forced to file this latest motion.

20  Defendants submit that willfulness, bad faith, and fault are shown, with zero mitigating factors,

21  citing Fjelstad v. American Honda Motor Co., Inc., 762 F2d 1334,1341 (9th Cir. 1985).  (Reply

22  5-6.)   Defendants further argue that the single authority cited in Plaintiffs' opposition,

23  Connecticut, 482 F.3d at 1096, supports their position.

24       In Connecticut, the Ninth Circuit stated this factor includes three subparts, including

25  "whether the court has considered lesser sanctions, whether it tried them, and whether it warned

26  the recalcitrant party about the possibility of case-dispositive sanctions."  Connecticut, 482 F.3d

27  at 1096 ("This 'test' is not mechanical [but] provides the district court with a way to think about

28  what to do, not a set of conditions precedent for sanctions or a script that the district court must

1  follow.").  The Court agrees in large part that the Court has considered lesser sanctions, tried

2  then, and specifically warned Plaintiffs Tuggle and Ware of the looming threat of dispositive

3  sanctions.  As Defendants highlight, it is true that the Court's order dated May 19, 2021, warned

4  Plaintiffs that further noncompliance would likely shift the balance in favor of a terminating

5  sanction.  Specifically, the Court rejected the Plaintiffs' argument that they had not been warned:

> Plaintiffs Tuggle and Ware argue that they have not been
> previously warned that terminating sanctions would be imposed if
> they did not comply with the Court's order.  However, the
> February 26, 2021 order granting Defendants' motion to compel
> specifically stated, "Plaintiffs are advised that the failure to comply
> with this order may result in the issuance of sanctions, up to and
> including dismissal of this action."  (ECF No. 28 at 12 (emphasis
> in original).)  A court's warning to a party that their failure to obey
> the court's order will result in dismissal satisfies the "consideration
> of alternatives" requirement.  Ferdik v. Bonzelet, 963 F.2d 1258,
> 1262 (9th Cir. 1992); Malone v. United States Postal Serv., 833
> F.2d 128, 132-33 (9th Cir. 1987); Henderson v. Duncan, 779 F.2d
> 1421, 1424 (9th Cir. 1986).  Here, Plaintiffs Tuggle and Ware have
> had sufficient notice that the failure to comply will result in
> dismissal of this action.  Any further such noncompliance will
> likely shift the balance in favor of a terminating sanction.

15  (ECF No. 42 at 20, n.3.)

16      The Court is skeptical of many of the excuses proffered by Plaintiffs Tuggle and Ware's

17  counsel, and as stated throughout this order, finds they need to more actively litigate this action

18  and exercise more diligence in working with their clients.  However, while lacking in needed

19  diligence in pushing their clients to comply, and not forgetting the Court's feeling that it is

20  Plaintiffs' Counsel that have mischaracterized Defense Counsel as expressed repeatedly above, it

21  appears counsel are starting to understand and are sincere in their communications to the Court

22  in admitting where they could be more diligent.  While the Court rejects the proffered excuses

23  regarding Counsel Goff's failure to connect to the meet and confer call and to follow-up, when

24  the Court explained at oral argument that the onus to follow-up after this alleged failure fell on

25  Counsel Goff, it appears counsel accepts this failure on his part.  While Defendants were not

26  under a strict obligation to further communicate with Plaintiff Tuggle and Ware's counsel

27  following the failure by Counsel Goff to appear at the meet and confer teleconference, perhaps

28  one more direct attempt by Defense counsel between the time of the conference call and the

filing of the motion to compel would have resulted in greater weight being shown in favor of terminating sanctions. Once the motion to compel was filed, it does appear Plaintiffs' Counsel worked with Plaintiffs to complete amended responses, albeit not being provided until the last day of the opposition being due, and notwithstanding the failure to obtain verifications from Ware. The Court accepts in part Counsel Goff's proffer that he honestly believed the responses served by postal mail on or around April 10, 2021, satisfied the May 19, 2021 order, (Goff Suppl. Decl. ¶ 14). See Fjelstad, 762 F.2d 1334, 1341–42 (9th Cir. 1985) ("Nothing in the record suggests that American Honda did not sincerely believe that the September 16 order modified its obligations under the July 29 order. American Honda's waiver of its right to object to the interrogatories and its failure to seek a protective order therefore did not make its violation of the July 29 order willful."). However, as stated above, even if Goff may have made an honest mistake, this timeline of events does not excuse the failure to comply with the Court's May 19, 2021 order, which clearly stated the Court's understanding of the fact that there were additional responses provided following the initial filing of the second motion to compel, as shown by the Court's requests for supplemental briefing and clarification from Defendants, and then clearly ordered the parties to meet and confer and provide further responses. (See ECF No. 42 at 3, 18, 22-23.) Connecting to the meet and confer call could have resolved this alleged misunderstanding. Counsel Goff further compounded this alleged misunderstanding by failing to properly follow-up after the inability to connect to the conference call.

Rule 37(b) "provides a wide range of sanctions for a party's failure to comply with court discovery orders." Campidoglio LLC v. Wells Fargo & Co., 870 F.3d 963, 975 (9th Cir. 2017). The sanctions available under Rule 37(b) "run the entire gamut, from ordering the 'disobedient party' to pay 'attorney's fees' to "treating as contempt of court the failure to obey any order.' " Infanzon v. Allstate Ins. Co., 335 F.R.D. 305, 313 (C.D. Cal. 2020) (quoting Fed. R. Civ. P. 37(b)(2)(A), (C)). "Willfulness, fault[,] or bad faith is not required for the imposition of monetary sanctions under" this rule. Infanzon, 335 F.R.D. at 313. "When sanctions are warranted, the Court must determine the appropriate level or severity of sanctions based on the circumstances of the case." Jensen v. BMW of N. Am., LLC, 331 F.R.D. 384, 386 (S.D. Cal.

1  2019) (quoting <u>Daniels v. Jenson</u>, No. 2:11-CV-00298-JCM, 2013 WL 1332248, at *2 (D. Nev.

2  Mar. 11, 2013)).

3       The Court finds willfulness and fault here, and perhaps bad faith in the failure to

4  prosecute.  The Court has previously imposed sanctions in the manner of costs for Plaintiffs

5  Tuggle and Ware's failure to comply with their discovery obligations under Rule 37(a).

6  Although Plaintiffs Tuggle and Ware have repeatedly served untimely and inadequate discovery

7  responses, at this time, the Court does not find that a terminating sanction would be the

8  proportionate sanction for the conduct at issue.

9       The Court has only imposed the lesser sanction of monetary sanctions up to this point.

10 The Court notes such monetary sanctions have been somewhat modest in the amounts of

11 $1,645.00, and $2,467.50.  Below, in relation to this motion, the Court grants an additional

12 $4,065.50 in monetary sanctions, which is not insubstantial.  The Court shall also impose the

13 greater sanction of evidentiary sanctions in conjunction with awarding such costs in full.

14 Because Plaintiffs have submitted discovery responses, (aside from no verifications from Ware),

15 and the parties are proceeding into depositions within a week, the Court finds tailoring

16 evidentiary sanctions applicable to the specific failures is the appropriate sanction.  <u>See</u> <u>Singh</u>,

17 2018 WL 6111663, at *5 ("While Plaintiffs have failed to comply with the Court's order to

18 provide adequate responses to Defendants' interrogatories and RFPs, and have been warned by

19 the Court that the failure to cooperate with discovery could lead to the dismissal of their claim,

20 the Court ultimately finds that lesser sanctions are available, specifically evidentiary

21 sanctions."); <u>Choudhuri</u>, 2017 WL 5598685, at *8 ("While Plaintiff has failed to adequately

22 comply with the Court's order to provide responses to Defendant's interrogatories and RFPs, and

23 has been warned by both the undersigned and the presiding judge that her failure to cooperate

24 with discovery could lead to the dismissal of her claim, the Court ultimately finds that lesser

25 sanctions are available, specifically evidentiary sanctions . . . by forbidding the use of

26 information, witnesses, or evidence on a motion or at trial, other than such information,

27 witnesses, or evidence that has been produced by Plaintiff, will permit the case to move forward

28 while mitigating prejudice to Defendant by preventing Plaintiff from producing a 'smoking gun'

1  at a dispositive motion or on the eve of trial . . . the Court concludes that the fifth factor of the

2  availability of lesser sanctions weighs heavily against the recommendation of terminating

3  sanctions.").

4       Accordingly, the Court finds that lesser sanctions remain available at this time to address

5  Plaintiff Tuggle and Ware's noncompliance and prejudice to Defendants.  This factor weighs

6  against the issuance of terminating sanctions.

7       **e.      The Factors Weigh Against Terminating Sanctions at this Time**

8       Although the public interest in expeditious litigation and the Court's need to manage its

9  docket weigh in favor of terminating sanctions, the Court finds that the prejudice to defendants

10  (to the extent addressed by evidentiary sanctions), the public policy in favor of resolution of

11  cases on the merits, and the availability of lesser sanctions weigh against terminating sanctions at

12  this time.  See Payne, 121 F.3d at 507 ("Where a court order is violated, the first two factors

13  support sanctions and the fourth factor cuts against a default.  Therefore, it is the third [prejudice]

14  and fifth [lesser sanctions] factors that are decisive."); Tacori Enterprises, 253 F.R.D. at 583

15  (stating same and finding that in consideration "that four of the foregoing factors have been met,

16  and three of the factors strongly support the imposition of sanctions . . . and in light of Beverlly's

17  abuse of the discovery process so far . . . evidentiary sanctions under Rule 37(b)(2)(A) are

18  appropriate.").

19       In applying a terminating sanction, the Ninth Circuit has discussed that "truth" is the

20  most critical factor, and whether the discovery violations threaten to interfere with the rightful

21  decision of the case:

22       Because it was predicated on a lie, Dr. Robinson's argument that
         the bankruptcy stay protected him from the order to compel fails.
23       The stay had been dissolved. Likewise, Robinson and Providence's
         argument that they were not warned relies on a false premise. They
24       were warned, in the language quoted above. Their argument that
         the order compelling responses was not timely served is also false
25       in fact, and depends on the tricky photocopying of the docket sheet
         that hid the first few characters . . .
26
27       . . . The record in this case, as we have discussed, amply supports
         sanctions.   In deciding whether to impose case-dispositive
28       sanctions, the most critical factor is not merely delay or docket
         management concerns, but truth.  "What is most critical for case-

dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.' "

Sometimes courts respond to contumacious refusal to produce required discovery or comply with orders compelling discovery with suggestions that lawyers "quit squabbling like children" and work things out for themselves. That can operate to the advantage of a dishonest, noncompliant party, and can prevent the truth from coming out. Federal Rule of Civil Procedure 1 requires that the rules be construed to secure the "just" resolution of disputes. "There is no point to a lawsuit, if it merely applies law to lies." The most critical factor to be considered in case-dispositive sanctions is whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." Dickson's "pattern of deception and discovery abuse made it impossible for the district court to conduct another trial with any reasonable assurance that the truth would be available. It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."

"Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." This was just such a case. The district court did its duty, and fairly exercised its discretion in order to secure a just resolution of the dispute.

Connecticut, 482 F.3d at 1096-97 (footnotes and citations omitted).

The Court does not find the failures here threaten the ability to reach the truth underlying the merits of the case, and does not find the failures will ultimately effect the rightful decision of the case on the merits. While the Court finds there is prejudice to Defendants from the failures, such prejudice can be appropriately addressed by evidentiary sanctions.

The Court is cognizant of Defendants' argument that the problem with "simply imposing evidentiary exclusion sanctions on these Plaintiffs is that their ongoing presence in the case will nonetheless allow them to ride the coattails of any evidence properly introduced by Plaintiff Cuevas." (Mot. 16, n. 5.)  There is merit to such proposition, however, this does not impact the ultimate ability of the Court and the parties to find the truth underlying this litigation, as it related to the public policy in favor of a resolution on the merits.  The Court believes properly tailored evidentiary sanctions, as briefed by the parties and discussed below, will be a proportionate sanction under all of the circumstances applied to these factors.

Accordingly, the Court denies the motion for terminating sanctions against Plaintiffs

Tuggle and Ware.

**f.** **Evidentiary Sanctions**

The Court finds evidentiary sanctions are appropriate here to address Plaintiffs' failures to comply with discovery orders, and to address the prejudice to Defendants. See Singh, 2018 WL 6111663, at *5 ("The Court also finds that evidentiary sanctions are necessary to prevent prejudice to Defendants due to Plaintiffs' failure to cooperate with discovery . . . Plaintiffs' refusal to participate in discovery has unnecessarily delayed the duration of this case by several months and prevented Defendants from acquiring basic information about Plaintiffs' claims. Given that the Court has already issued an order compelling discovery, and repeatedly warned Plaintiffs that their conduct in litigating this case is causing delays and could lead to sanctions, the Court finds that lesser sanctions would not be effective."); Choudhuri, 2017 WL 5598685, at *8-9 ("The Court also finds that evidentiary sanctions are necessary to prevent prejudice to Defendant due to Plaintiff's failure to cooperate with discovery. Given that the Court has already issued two discovery orders, and repeatedly warned that failure to cooperate in discovery could lead to sanctions, the Court finds that lesser sanctions would not be effective.'); Tacori Enterprises, 253 F.R.D. at 583.

As the Court found evidentiary sanctions appropriate, at oral argument, the Court ordered Defendants to submit a proposed order outlining proper evidentiary sanctions given the facts of this case and course of discovery, and ordered Plaintiffs Tuggle and Ware to provide a response. The Court now turns to consider the proposals and arguments presented by the parties.[7]

i.    Plaintiff Ware

Defendants submit that beyond complaining about the inconvenience of traveling to Tulare to obtain a verification, Plaintiffs' Counsel offered no excuse for Ware's failure to

---

[7]  The Court notes that while Plaintiffs were expressly ordered to submit a reply by the close of business on August 4, 2021, Plaintiffs did not  file the document until 6:03 p.m. on August 4, 2021.  Close of business is widely accepted to be 5 p.m., and this Court is only open to the public until 5 p.m., as indicated on the Court's webpage. Even if the Court accepted close of business to be 6 p.m., this filing was not received by such time.  Given the history underlying these three motions to compel, and the numerous excuses provided by counsel on behalf of themselves and their clients, it is astonishing that counsel did not ensure this filing was submitted with time to spare. Nonetheless, given the seriousness of evidentiary sanctions to their clients, and the harm of a submission at 6:03 p.m. is *de minimus*, the Court considers the arguments presented in the filing.

provide verification after over 16 months of discovery.  (Defs.' Prop. Guidelines Evid. Sanctions ("Evid. Br.") 2, ECF No. 55.)  It is undisputed that Ware has failed to provide verifications for interrogatory responses as ordered by the Court on May 19, 2021.  In fact, in the reply filed August 4, 2021, Plaintiffs concede that the situation is "more problematic in the case of Mr. Ware," than for Tuggle, and proffer that while Plaintiffs' Counsel "has provided several rounds of responses on behalf of Mr. Ware, Mr. Ware's responses to special interrogatories are unverified," and Plaintiffs' Counsel "have had difficulty getting a hold of their client."  (Pls.' Opp'n Prop. Evid. Sanctions ("Evid. Opp'n") 5, ECF No. 56.)  Above, the Court rejected the various excuses pertaining to Ware's verifications.

Based on the Court's tentative ruling at oral argument that anything produced by Plaintiffs after the July 14, 2021 opposition,[8] that could have been produced by such date, would be subject to an evidentiary sanction, and based on the lack of verified responses, Defendants argue that while they could seek to preclude Ware from testifying on any and every matter sought by all interrogatories, Defendants "exercise restraint" and seek to only exclude any and all testimony or evidence from Ware concerning:

1.     Any claim of emotional distress or similar injuries based on a complete lack of a verified response to Interrogatory No. 6, which requested Ware to: "Please describe in complete detail the precise nature of any and all injuries and damages you are claiming as a result of YOUR lawsuit"; and

2.     Plaintiffs' <u>Monell</u> claims against the City of Tulare based on a complete lack of verified responses to Interrogatory No. 9, which requested Ware to: "Please state in complete detail each and every fact (including the source of each such fact) upon which you base your contention that the City of Tulare has a widespread custom and practice of ratifying excessive force," and Interrogatory No. 10, which requested Ware to: "Please state in complete detail each and every fact (including the source of each such fact) upon

---

[8]  As discussed above, while there was no direct requirement by Defendants to further contact Plaintiffs' Counsel following the failure by Goff to appear at the teleconference, additional attempts to contact or confer prior to the filing of the motion to compel would have likely resulted in the date of the filing of the motion to compel being the applied deadline, rathe than July 14, 2021.

1   which you base your contention that the City of Tulare has had inadequate training of its

2   officers."

3   (Evid. Br. 2.)

4          Based on the lack of verified responses, Plaintiffs' counsel concedes it is fair that Ware

5   "should not be allowed to present any evidence beyond garden variety emotional distress at this

6   point." (Id.) With respect to the <u>Monell</u> claim, given Plaintiff Tuggle, and likely Plaintiff

7   Cuevas will be making similar <u>Monell</u> claims, they argue there is no prejudice to Defendants

8   because Tuggle's verified responses are the same as Ware's unverified responses. (Id.)

9   Specifically, Plaintiffs' proposed order first proffers the Court exclude: "Any evidence that

10  Plaintiffs Letitia Tuggle and Cameron Ware could have produced on or prior to July 14, 2021 in

11  connection with defendants' set one of interrogatories and requests for production of

12  documents." (ECF No. 56-1.) The proposed order also requests the Court to only order

13  exclusion from Ware "requesting anything other than garden variety emotional distress

14  damages," and contains no specific order as to Ware's <u>Monell</u> claim. (Id.)

15         The Court finds Plaintiffs' counter-proposal is too narrow given the lack of prosecution

16  and compliance by Ware. It is also unclear what "anything other than garden variety emotional

17  distress damages" means. Given the lack of response to Interrogatory No. 6, Defendants' request

18  to exclude any evidence or testimony concerning emotional distress or similar injuries is more

19  appropriate given the nature of this interrogatory. Defendants' proposed evidentiary sanction as

20  to Ware's emotional distress or similar injuries shall be granted.

21         The Court comes to the same conclusion as to Plaintiffs' counter-proposal concerning the

22  <u>Monell</u> claim, given the complete lack of response to the relevant interrogatories. Defendants'

23  requested evidentiary sanction as to Ware's <u>Monell</u> claim shall be granted, and the Court will

24  additionally grant a limiting instruction applicable to Ware as to evidence introduced by other

25  parties.

26         ii.   <u>Plaintiff Tuggle</u>

27         Defendants emphasize that while verified responses from Tuggle were received on July

28  14, 2021, it took 16 months and three motions to compel in order to obtain an interrogatory

1    verification from Tuggle.  (Evid. Br. 3.)  Defendants submit that these untimely responses must

2    remain subject to evidentiary sanctions.

3           1)      Noneconomic Damages Beyond Normal Emotional Distress

4           First, Defendants submit that Tuggle should be precluded from offering any testimony or

5    evidence seeking to support any and noneconomic damages beyond normal emotional distress,

6    including any testimony or evidence offered by or through any medical provider or expert

7    witness.  (Evid. Br. 3; ECF No. 55-1.)  Interrogatory No. 6 request Tuggle to: "Please describe in

8    complete detail the precise nature of any and all injuries and damages you are claiming as a

9    result of YOUR lawsuit."  (Evid. Br. 3.)  Through March 31, 2021, Tuggle's supplemental

10   responses were limited to "Plaintiff is claiming emotional distress, loss of familial relationship."

11   (Id.)  Defendants argue it was only in the July 14, 2021 response to the third motion to compel

12   that Plaintiff suddenly attempted to add "depression and PTSD" and "vision problems when

13   dealing with her son's death . . . as diagnosed by Dr. David Anger."  (Id.)  Defendants highlight

14   that by Plaintiff Tuggle's own statement in a second supplemental response, she has been

15   treating with Dr. Angert "from 2019 through February 2021."  Thus, Defendants argue that in

16   other words, Tuggle was well aware of the claims of "PTSD," "depression," and "vision

17   problems," at the time of her March 2021 response to the interrogatories, but nonetheless

18   expressly limited herself to a routine claim of "emotional distress" and "familial relations."

19   (Evid. Br. 4.)

20          Interrogatory No. 8 stated: "If you are claiming any physical or psychiatric injury as a

21   result of this incident, please describe such injury in complete detail and what, if any, treatment

22   you have received to date (including name of provider and dates)."  (Id.)  Tuggle's most recent

23   supplemental response as of July 14, 2021, states: "Plaintiff has undergone mental health

24   treatment for depression and PTSD stemming from the death of her son."  (Id.)  Tuggle then lists

25   three providers with no additional information.  (Id.)  Defendants argue that despite multiple

26   orders from the Court requiring Tuggle to provide a detailed response, this non-responsive

27   answer warrants evidentiary preclusion of any and all evidence and testimony beyond normal

28   emotional distress.  (Id.)

1      Finally, Defendants highlight that Tuggle has never provided any medical or other

2  records supporting any claimed injuries in response to RFP No. 10, which requested: "Please

3  provide any and all medical records, receipts, bills or other documentation verifying any physical

4  or psychiatric injuries YOU are claiming on behalf of YOURSELF as a result of this incident."

5  (Id.)  Defendants proffer that even the most recent response raised no objections or claim of

6  privilege, but instead simply claimed she was unable to locate any responsive documents after a

7  diligent effort.  (Id.)  Defendants argue this is improper as Rule 34(a)(1) permits discovery of

8  items within Plaintiff's control, which includes having a legal right to obtain documents.

9  "Control is defined as the legal right to obtain documents upon demand."  In re Citric Acid

10  Litig., 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting United States v. International Union of

11  Petroleum & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir.1989)).  Defendants argue that given

12  Plaintiff's diligence failed to include the simple act of obtaining her own records from her

13  treating physicians, Plaintiff Tuggle must be precluded from introducing any such records or

14  testimony from the recently disclosed Dr. Gwen Angert, Dr. David Angert, Christina Keller,

15  MSCW, and/or Leticia Lopez, EDMR.  (Evid. Br. 4-5.)

16      Plaintiffs reply that Tuggle has provided verified and complete responses by July 14,

17  2021, and specifically previously, on March 31, 2021, in addition to stating she was suffering

18  from: "emotional distress, [and] loss of familial companionship," Tuggle further provided that

19  she had undergone mental health treatment from Dr. Angert, Keller, and Lopez.  (Evid. Opp'n

20  2.)  Plaintiffs correctly highlight that Defense Counsel has been aware that Tuggle has undergone

21  mental health treatment from Dr. Angert, Keller, and Lopez, as shown on the April 12, 2021

22  motion to compel (ECF No. 33 at 7), and nonetheless, Tuggle amended the responses on July 14,

23  2021, by expanding on her damages by specifying:

24              Plaintiff is claiming emotional distress, loss of familial
              companionship. Plaintiff suffers from depression and PTSD.
25              Plaintiff was diagnosed as suffering from those conditions by Dr.
              David Angert of Family HealthCare Network in Visalia,
26              California. Additionally, Plaintiff has been suffering from vision
              problems when dealing with her son's death. Any time that her
27              stress levels rise as a result of this incident, Plaintiff's vision
              becomes impaired . . .
28

1  
2  
3  
4  
5  
6  

> Plaintiff has undergone mental health treatment for depression and PTSD stemming from death of her son from the following mental health providers: Plaintiff was initially seen by Dr. Gwen Angert in November 2019; She was then referred to Dr. David Angert due to a conflict of interest with Dr. Gwen Angert. Plaintiff was seen by Dr. David Angert from 2019 through February 2021. Plaintiff also sought treatment from Christina Keller, MCSW during that same time period for mental health issues. Additionally, Plaintiff began seeing Leticia Lopez, EMDR, MCSW in 2020 and is still being treated by her in connection with her vision problems as described above.

7  (Evid. Opp'n 2-3.)  Plaintiffs thus argue that because all of the above responses have been

8  verified and received on or prior to July 14, 2021, such information should not be excluded.

9  Other than precluding future production of any evidence that could have been produced before

10  July 14, 2021, Plaintiffs' proposed order seeks no other specific exclusion.

11  Based on the fact that Plaintiff Tuggle did identify generally that she was undergoing

12  mental health treatment from the above specified practitioners (ECF No. 33 at 7), and further

13  provided supplemental verified responses by July 14, 2021 specifying her diagnoses, the Court

14  will not exclude all testimony or evidence pertaining to such claims.  However, given Plaintiff

15  Tuggle had a duty and ability to provide relevant documents from such treatment, Tuggle shall

16  be precluded from offering any documentary evidence that could have been produced prior to

17  July 14, 2021, in connection with such claims.

18      2)    <u>Monell</u> Claims

19  Defendants seek to preclude Tuggle from offering any evidence or testimony seeking to

20  support any <u>Monell</u> claim against Defendants beyond reference to an apparent "Reedom" officer-

21  involved shooting and/or references to Tulare Police policies.  (Evid. Br. 5; ECF No. 55-1.)[9]

22  Defendants argue Tuggle's response to Interrogatory No. 9 is inadequate.  Interrogatory

23  No. 9 requested Tuggle to: "Please state in complete detail each and every fact (including the

24  source of each such fact) upon which you base your contention that the City of Tulare has a

25  

26  
27  
28  

---

[9] While the supplemental briefing at one point requests exclusion of any testimony or evidence in support of the <u>Monell</u> claim (Evid. Br. 5), it also avers to allowing her to address policy issues.  The proposed order submitted by Defendants appears to be the correct final form of the request, and states exclusion of anything aside from reference to the "Reedom" officer-involved shooting, and reference to Tulare Police policies.  (ECF No. 55-1 at 2.)  The more narrow request in the proposed order appears to be the correct final form requested by Defendants and is what the Court proffers here as requested.

widespread custom and practice of ratifying excessive force." (Evid. Br. 5.)  In the most recent response from Tuggle, Plaintiff only makes reference to a 2018 officer-involved shooting of Jontell Reedom.  In response to RFP No. 11 seeking all materials supporting such claim, Plaintiff only states her diligent efforts failed to locate any such documents. (Id.)

Interrogatory No. 10 requested Tuggle to: "Please state in complete detail each and every fact (including the source of each such fact) upon which you base your contention that the City of Tulare has had inadequate training of its officers." (Id.)  Here, Tuggle only again referenced the Reedom officer-involved shooting and alleged that Tulare Police Department policies do not require (1) CIT training, (2) do not prohibit throwing a K9 into a window, and (3) an absence of any policy prohibiting shooting into a moving vehicle. (Id.)  Additionally, the response to the corresponding RFP also claimed a lack of responsive documents despite diligent efforts. (Id.)  Thus, Defendants argue that while Tuggle may be permitted to address "policy" issues for the Tulare Police Department, Tuggle should not be able to introduce other evidence or testimony regarding alleged inadequate training. (Id.)

Plaintiffs reply that Tuggle has provided responses supportive of Monell liability based on the evidence at hand; that discovery is ongoing and the parties will be deposing Defendants' PMKs on the Tulare Police Department's procedures in coming weeks. (Evid. Opp'n 4.)  Plaintiffs thus argues it would be improper to penalize Tuggle for not having conducted such deposition yet, and the Rules only ask to provide responses with information in her custody and control, and don't require an expert declaration explaining the Monell claim at this point.

The Court shall grant Defendants' request to impose an evidentiary sanction precluding Plaintiff Tuggle from offering any testimony or evidence that supporting any Monell claim against Defendants beyond reference to an apparent "Reedom" officer-involved shooting and/or references to Tulare Police policies.  The Court shall also grant Defendants' request for a limiting instruction as to reliance on evidence introduced by other parties.

### g.    Monetary Sanctions

Defendants seek monetary sanctions of $4,065.50 to recover the costs of bringing the instant motion, and for the additional cost of drafting the proposed order and briefing following

1   the oral argument.  (Evid. Br. 6.)  In the reply to the proposed order, Plaintiffs submit they "agree
2   to pay the monetary sanctions in the amount of $3,l25.50," in relation to the motion to compel,
3   but request Defendants should not be awarded the additional $940.00 sought in connection with
4   the supplemental brief and proposed order.  (Evid. Opp'n 5.)  Plaintiffs only argument in this
5   regard is that "Defendants here are swinging for the fences when the Court did not say that they
6   could request any further monetary sanctions at its July 28, 2021 hearing.  There is no need for
7   overkill."  (Id.)

8        Rule 37 provides that "the court must order the disobedient party, the attorney advising
9   that party, or both to pay the reasonable expenses, including attorney's fees, caused by the
10  failure, unless the failure was substantially justified or other circumstances make an award of
11  expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  The Court appreciates that Plaintiffs concede the
12  base amount of fees should be paid, however, the Court does not find Defendants' reasonable
13  request for additional fees to craft the evidentiary sanction proposed order to be unwarranted.
14  The Court found it necessary for Defendants to do so in order to address the failures by Plaintiffs
15  to comply with discovery, and to address the prejudice such failures caused.  The "belated
16  compliance with discovery orders does not preclude the imposition of sanctions."  Fair Hous. of
17  Marin, 285 F.3d at 906 (quoting Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S.
18  639, 643 (1976) and G–K Props. v. Redevelopment Agency of the City of San Jose, 577 F.2d
19  645, 647–48 (9th Cir. 1978)).  The last-minute tender of the discovery responses "does not cure
20  the prejudice to opponents nor does it restore to other litigants on a crowded docket the
21  opportunity to use the courts."  Fair Hous. of Marin, 285 F.3d at 906 (quoting G–K Properties,
22  577 F.2d at 647–48).  Here, it is undisputed that Plaintiffs Tuggle and Ware did not serve their
23  discovery responses in compliance with the May 19, 2021 order and the amended responses were
24  not served until the day the opposition was filed.  Accordingly, the Court shall grant Defendants'
25  motion for monetary sanctions.

26       In determining if the amount requested is reasonable courts use the lodestar method
27  which multiplies the number of hours reasonably expended by counsel by the reasonable hourly
28  rate.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v.

1  Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008); Infanzon, 335 F.R.D. at 314.

2     Given Plaintiffs' agreement to pay the base fees of $3,125.50, the Court only need to

3  determine the reasonableness of the disputed fees.  The Court finds that 4.0 hours was reasonably

4  expended by counsel in drafting the supplemental brief and proposed order.  (Evid Br. 6.)  As the

5  Court has previously found, the rate of $235.00 per hour for the services of Counsel Praet is

6  reasonable given his experience.  (See ECF No. 28 at 11.)

7     Attorney fees in the amount of $4,065.50 shall be awarded to Defendants for the costs

8  incurred in bringing the instant motion to compel necessitated by Plaintiffs Tuggle and Ware's

9  failure to comply with the Court's May 19, 2021 order and other discovery obligations.

10                                          **V.**

11                         **CONCLUSION AND ORDER**

12     Based on the foregoing, the Court finds that Plaintiffs Tuggle and Ware have failed to

13  comply with the Court's May 19, 2021 order granting Defendants' motion to compel.

14  Consideration of the factors for terminating sanctions weigh against the imposition of

15  terminating sanctions.  However, the Court finds that evidentiary and monetary sanctions are

16  appropriate for Plaintiff Tuggle and Ware's noncompliance with their discovery obligations and

17  the Court's order.

18     Accordingly, IT IS HEREBY ORDERED that:

19  1.   Defendants' motion to compel discovery and for sanctions against Plaintiffs

20       Letitia Tuggle and Cameron Ware IS GRANTED IN PART AND DENIED IN

21       PART as follows:

22       a.   Defendants' motion for terminating sanctions is DENIED;

23       b.   Defendants' motion for monetary sanctions is GRANTED;

24  2.   Evidentiary sanctions shall be imposed as follows, applicable to motions or at

25       trial:

26       a.   Plaintiffs Letitia Tuggle and Cameron Ware shall hereafter be precluded

27            from offering any testimony or evidence that Plaintiffs Letitia Tuggle and

28            Cameron Ware could have produced on or prior to July 14, 2021 in connection

with Defendants' set one of interrogatories and requests for production of documents;

    b.    Plaintiff Cameron Ware shall hereafter be precluded from offering any testimony or evidence claiming emotional distress or other similar injuries;

    c.    Plaintiff Cameron Ware shall hereafter be precluded from offering any testimony or evidence seeking to support any <u>Monell</u> claim against Defendants;

    d.    Plaintiff Letitia Tuggle shall hereafter be precluded from offering any documentary evidence from the practitioners identified in Interrogatory No. 6, that could have been produced in response to RFP No. 10;

    e.    Plaintiff Letitia Tuggle shall hereafter be precluded from offering any testimony or evidence seeking to support any <u>Monell</u> claim against Defendants beyond reference to an apparent "Reedom" officer-involved shooting and/or references to Tulare Police policies;

    f.    To the extent that any <u>Monell</u> evidence is introduced by any party not subject to this order (*e.g.* Plaintiff Rosa Cuevas), Defendants shall be entitled to a limiting instruction or other order precluding reliance upon such evidence by Plaintiffs Cameron Ware and/or Letitia Tuggle;

3.    Within **thirty (30) days** of the date of entry of this order, Plaintiffs Letitia Tuggle and Cameron Ware shall pay costs of $4,065.50 to Defendants, made payable to Ferguson, Praet & Sherman;

4.    Nothing in the Court's order shall be read to absolve Plaintiffs of their continuing obligation to supplement incomplete or incorrect disclosures or responses in a timely manner, Fed. R. Civ. P. 26(e); and

/ / /

/ / /

/ / /

/ / /

/ / /

1     **5.      Plaintiffs Tuggle and Ware are advised that the failure to comply with this order will result in the issuance of sanctions, up to and including dismissal of this action.**

IT IS SO ORDERED.

Dated:   **August 6, 2021**

_____
UNITED STATES MAGISTRATE JUDGE